Jack Scarola
Florida Bar No.: 169440
Attorney E-Mail(s): jsx@searcylaw.com and
                      mep@searcylaw.com
Primary E-Mail: _scarolateam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax:     (561) 383-9451

*Attorney for Bradley J. Edwards*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: SUBPOENA TO BRADLEY J. EDWARDS<br><br>Underlying case:<br><br>VIRGINIA L. GIUFFRE, Plaintiff<br><br>v.<br><br>GHISLAINE MAXWELL, Defendant<br><br>No. 15-cv-07433-RWS (S.D.N.Y.) | **BRADLEY J. EDWARDS' MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW**<br><br>Case No. |

      Subpoena respondent Bradley J. Edwards, a non-party and attorney for the Plaintiff in the *Giuffre v. Maxwell* action, hereby moves to quash the subpoena served on him by Ghislaine Maxwell, the Defendant in the *Giuffre v. Maxwell* action.

## BASIS FOR RELIEF REQUESTED

      Edwards requests that this Court quash the subpoena issued by Defendant Maxwell to Edwards or, in the alternative, enter a protective order barring Maxwell from enforcing the subpoena. The bases for Edwards' motion, which are set forth more fully in the Memorandum of Legal Authority below, are as follows:

1)   The subpoena subjects Edwards to undue burden.

2)   The information sought in the subpoena is not reasonably calculated to lead to the discovery of admissible evidence.

3)   Maxwell has the ability to obtain the information sought in the subpoena directly from other persons, including (for example) a person with whom she has a joint defense agreement.

4)   Maxwell has failed her duty, imposed by Federal Rule of Civil Procedure 45(c)(1), to avoid imposing undue burden or expense on Edwards.

5)   Maxwell seeks privileged information about Edwards' confidential attorney-client and work-product protected communications.

6)   Maxwell has not provided the required notice of subpoena for a nonparty under Federal Rule of Civil Procedure 45(a)(4).

## STATEMENT OF FACTS SUPPORTING REQUEST FOR RELIEF

1.    Edwards is a Florida attorney who maintains his office in Fort Lauderdale, Florida.

2.    Edwards is a counsel of record for Plaintiff Virginia L. Giuffre in the case *Giuffre v. Maxwell*, No. 15-cv-07433-RWS (S.D.N.Y.).   Other counsel of record include: Sigrid S. McCawley and Meredith Schulz of Boies, Schiller & Flexner, LLP (Ft. Lauderdale, Florida), and Paul G. Cassell who maintains his law office at the University of Utah (Salt Lake City, Utah).

3.    In *Giuffre v. Maxwell*, Ms. Giuffre alleges that she was defamed by Defendant Maxwell when Maxwell called her a "liar" and otherwise challenged the accuracy of Ms. Giuffre's statements that Maxwell was involved in her sexual abuse.  *See* Declaration of Bradley J. Edwards in Support of Edwards' Motion to Quash ("Edwards Decl."), Exhibit 1 (Giuffre v. Maxwell Complaint).

4.    Edwards has received a subpoena to produce numerous documents in the *Giuffre v. Maxwell* case.  Edwards Decl., Ex. 2. Edwards is not a party to that case.

5.    The subpoena requests the production of fourteen different categories of documents (referred to in this motion as RFPs 1 through 20).  Under the subpoena, RFPs #1 and #2 are all documents produced by Edwards or received by Edwards in a case styled *Edwards and*

2

*Cassell v. Dershowitz*, 15-000072 (17th Judicial District, Broward County, Florida).   The production at issue in that case spanned several thousand pages of documents.   Edwards Decl., Ex. 3 at ¶ 5.   Production *from* Dershowitz came in several different stages, and various productions involved assertions of privilege.   Production *to* Dershowitz of documents and receipt of documents in that case was handled by Edwards' attorney.   *Id.*   While Edwards has many of the documents that were produced or received, he did not comprehensively maintain records of the exact documents produced or received, because he was the Plaintiff, and not the attorney in that case.   *Id.*

6.      While Defendant Maxwell has subpoenaed Edwards to produce various documents associated with the Dershowitz case, she is in a common interest agreement with Dershowitz.   *See* Edwards Decl., Ex. 4 at 471, 507-31, particularly at 524-28 (excerpts from deposition of Alan Dershowitz during which, on instructions from Mr. Epstein's attorney Mr. Indyke, Dershowitz refuses to answer deposition questions about Maxwell based on a common interest agreement with her).   When Maxwell was asked to produce documents related to any joint defense agreement entered into between her and Dershowitz, she responded: "Ms. Maxwell objects to this Request to the extent it seeks documents or information protected by the attorney/client privilege, the work-product doctrine, the common interest privilege or any other applicable privilege.   Subject to and without waiver of the foregoing, Defendant has been unable to locate any documents responsive to this Request."   Edwards Decl., Ex. 5 at 8.

7.      RFP's #3, #4, and #5 seek to force Edwards to produce voluminous documents in the case known as *Epstein v. Edwards et al.,* Case No. 50-20009 CA 04080XXXXMBAG (15th Jud. Cir., West Palm Beach, Florida).   Edwards Decl. at ¶ 12.   Production of those documents would be very burdensome, because Edwards' files are not organized to differentiate the production in that case from materials associated with other cases.   *Id.*   Additionally, Edwards

3

was a party Plaintiff and not the attorney of record in that case as well. Incidentally, Defendant

Maxwell is also in a joint defense agreement with the other party in the case, Jeffrey Epstein. *Id.*

at ¶ 13.

8.     RFP #6 in the subpoena seeks discovery from the case *Jane Doe 1 and Jane Doe

2 v. United States*, No. 9:08-cv-80736-MARRA (S.D. Fla.). Edwards is an attorney in that case,

along with co-counsel Paul G. Cassell. Edwards and Cassell filed the case in July of 2008 and

have been handling the matter ever since on a pro bono basis. Edwards Decl. Ex. ¶ 14. The case

currently has 393 docket entries.

9.     Edwards and Cassell represent Jane Doe 1 and Jane Doe 2 in the action, brought

under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771. This CVRA action alleges that

the Government negotiated a non-prosecution agreement with sex abuser Jeffrey Epstein, and

then concealed the agreement from Epstein's victims, including Jane Doe 1, Jane Doe 2, and

other similarly situated victims. *See* Edwards Decl., Ex. 5 (complaint in *Jane Doe 1 v. United

States*). Edwards and Cassell filed motion to join on behalf of Jane Doe 3 (Ms. Giuffre) and Jane

Doe 4, which was denied.

10.    Over the course of the nearly eight years of litigation in the case, the Government

has produced in discovery correspondence between attorneys for Jeffrey Epstein and itself (i.e.,

the U.S. Attorney's Office for the Southern District of Florida and other components of the

Justice Department). That correspondence has been produced in multiple steps and amounts to

hundreds of pages (if not thousands of pages) of material. *See* Edwards Decl. at ¶ 15.

11.    On February 10, 2016, Edwards and Cassell filed a sixty-page motion for

summary judgment that included 140 exhibits. DE 361 & 362, No. 9:08-cv-80736-MARRA.

Those exhibits are not under seal.

12.     Apart from correspondence in the public case file, the Discovery produced by the Government in the *Jane Doe 1 v. United States* case is currently subject to a protective order. *Does v. United States*, DE 326 at 4.

13.     RFP #7 seeks engagement letters between Edwards and Ms. Giuffre.  Such materials can be, and have been, sought and produced in the *Giuffre v. Maxwell* action.  Edwards Decl. at ¶ 16.

14.     RPFs #8 and #9 seek joint defense agreements to which Ms. Giuffre is a party. These documents can be, and have been, sought and produced in the *Giuffre v. Maxwell* action. Edwards Decl. at ¶ 17.

15.     RFPs #10 and #11 seek documents relating to Edwards' work on behalf of a Florida corporation, Victims Refuse Silence, Inc. ("VRS").   Maxwell has already filed a subpoena to VRS for materials that might be relevant to this case.  Edwards Decl., Ex. 3 (VRS subpoena).  Moreover, any work Edwards would have done for the corporation would have been as an attorney and would have been protected by the attorney-client privilege.  Edwards Decl. at ¶ 18.

16.     RFP #11 seeks any disclosures made to Edwards by Victims Refuse Silence, Inc., and "any person associated with Victims Refuse Silence, Inc."  It appears to be undisputed that Ms. Giuffre is a person associated with VRS, and she is also a client of Edwards.  Edwards Decl. at ¶ 19.

17.     RFP #12 seeks documents relating "to any disclosures made by You by Virginia Roberts Giuffre, or consents provided to You by Virginia Roberts Giuffre, pursuant to any of the Florida Rules of Professional Conduct."   Any such materials would involve confidential attorney-client communications.  Edwards Decl. at ¶ 20.

18.     RFP #13 seeks to have Edwards produce documents "concerning any investigation by any law enforcement agency that refer to Ghislaine Maxwell."  Such documents can be, and have been, sought in the *Giuffre v. Maxwell* action.  Counsel for Ms. Giuffre have asserted privilege over the documents and submitted those documents for in camera review by Judge Sweet. *See* Giuffre v. Maxwell, DE 128 at 1 ("Plaintiff Virginia Giuffre hereby notifies the Defendant of her submission of law enforcement materials to the Honorable Judge Robert W. Sweet for *in camera* review . . . .").  That review is on-going at this time.

19.     RFP #15 seeks all documents with any "journalist, reporter, producer, author, director, or any employee or agent of the same" which "relate or refer to Virginia Giuffre, Ghislaine Maxwell or Jeffrey Epstein." Edwards has been working on the CVRA case, which "relates" to Epstein since July 2008.  Edwards Decl. at ¶ 21.  During that nearly eight year period of time, he received approximately 200,000 emails and sent approximately 80,000 emails. *Id.* at ¶ 22.  It would be significantly burdensome for Edwards to have to search through those emails to try to identify communications with "journalists."

### MEMORANDUM OF LEGAL AUTHORITY

### THE SUBPOENA SUBJECTS EDWADS TO AN UNDUE BURDEN AND SHOULD BE QUASHED OR A PROTECTIVE ORDER SHOULD BE ENTERED

Defendant Maxwell has served a subpoena on Edwards as an attorney for the party against whom she is litigating.  The subpoena appears to be designed not to secure important information in the case but rather to unduly burden the Edwards with the obligation to respond.  Much, if not all, of the information can be secured from other sources and in other ways.  And most, if not all of the remaining material, is protected by attorney-client or work-product protection.  Accordingly, the subpoena should be quashed or, in the alternative, a protective order should be entered.

6

## I.  The Legal Standards

Federal Rule of Civil Procedure 45 sets out the procedures for serving and responding to subpoenas.  For a subpoena requiring the production of documents, Rule 45 requires that "notice and a copy of the subpoena must be served on each party" before service on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).[1]  Rule 45 also requires that a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(c)(1).  The Rule further states that "[t]he issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply."  *Id*.  The Rule also states that, upon a timely motion, "the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iv).

"Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure."  *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662-663 (D. Kan. 2003).  *Accord Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).  *See also Dart Industries Co., Inc. v. Westwood Chemical Co.,* 649 F.2d 646 (9th Cir.1980) ("While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a non-party is the target of discovery."); *Katz v. Batavia Marine & Sporting Supplies, Inc.,* 984 F.2d 422, 424 (Fed.Cir.1993) ("Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances."); *Travelers Indemnity Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113

---

[1] Defendant Maxwell has failed to provide any such notice of service to Giuffre.  Under the local rules, this makes the service of the subpoena on Cassell technically defective.  *See* FRCP 45-1 (forbidding service of a subpoena on a non-party requiring production of documents until four days after the service of the notice f the subpoena).

(D. Conn. 2005) ("An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party.")  Indeed, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a Rule 45 inquiry.  *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).  "Whether a subpoena imposes an 'undue burden' depends on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."  *Travelers*, 228 F.R.D. at 113 (internal quotation marks omitted).  "The determination of issues of burden and reasonableness is committed to the sound discretion of the trial court."  *Id.*

In addition, of particular importance here, numerous federal district courts have determined that a subpoena to a non-party seeking the production of documents constitutes an "undue burden" on the subpoena respondent when the issuer of the subpoena can obtain (or already has obtained) the documents or testimony from a party to the action.  *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005); *Travelers*, 228 F.R.D. at 113-114; *Jones v. Hirschfeld*, 219 F.R.D. 71, 78 (S.D.N.Y. 2003); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014); *Precourt v. Fairbank Reconstruction Corp.,* 280 F.R.D. 462, 467 (D.S.D.2011) ("If the party seeking information can easily obtain the same information without burdening the non-party, the court will quash the subpoena."); *Brown v. City of Syracuse,* 648 F.Supp.2d 461, 466 (N.D.N.Y.2009) (when balancing hardships between requesting party and non-party, court should consider whether there are other sources for obtaining the material); *Arthrex, Inc. v. Parcus Medical, LLC,* 2011 WL 6415540, at *6 (S.D.Ind. Dec. 21, 2011) ("A party's ability to obtain documents from a source with which it is

litigating is a good reason to forbid it from burdening a non-party with production of those same requests.").

Moreover, district courts have also ruled that a subpoena to a non-party represents an "undue burden" if the information sought is not relevant pursuant to Federal Rule of Civil Procedure 26(b)(1).  *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005); *Jones v. Hirshfeld*, 219 F.R.D. 71 (S.D.N.Y. 2003).  "Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena."  *Moon*, 232 F.R.D. at 637.  "[A] court has discretion to circumscribe discovery even of relevant evidence by making 'any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'"  *Jones*, 219 F.R.D. at 74 (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

## II.    **The Court Should Quash the Subpoena to Edwards**.

RFPs #1 and #2 Should be Quashed.

RFPs #1 and #2 ask Edwards to produce documents that were produced by Dershowitz (or to Dershowitz) in the *Edwards and Cassell v. Dershowitz* litigation.  The Court will notice immediately that, in seeking Dershowitz documents, Defendant Maxwell has not asked Dershowitz to provide them.  Her failure to seek these documents directly from Dershowitz is all the more puzzling because she has been working closely with Dershowitz for some time.  In particular, during the Dershowitz litigation, an attorney for Dershowitz blocked discovery into matters known by Dershowitz under a "common interest agreement" that was in place and extended between Dershowitz, Epstein, and Maxwell.  *See* Edwards Decl., Ex. 4 esp. pp. 523-27 (excerpts from deposition of Alan Dershowitz).  In light of the fact that Maxwell and Dershowitz have a close working relationship, it is unduly burdensome that Maxwell seeks these items not

from her *ally* but from attorneys for her legal adversary.  As in the *Jones* case cited above, it appears that Maxwell's motivation for issuing the subpoena and seeking discovery from Edwards is "merely for the sake" of conducting further discovery that will burden Edwards, most if not all of which is not reasonably calculated to lead to the discovery of admissible evidence in the Maxwell case.  *Jones*, 219 F.R.D. at 78.

In addition, Edwards was a party to the *Edwards and Cassell v. Dershowitz* litigation, and was represented by outside lead counsel.  Consistent with the behavior of nearly every litigant, Edwards did not make it a point to precisely catalogue each and every document that was being received or produced.  *See* Edwards Decl. at ¶ 11. Similarly, Edwards provided materials to his attorney who, in turn, selected which materials were responsive to Dershowitz's discovery request.  *Id.*  In such circumstances, it would be an undue burden to force Edwards to confer with his attorney to reconstruct precisely what materials were produced and received in the litigation. Dershowitz is in a common interest agreement relationship with Maxwell, therefore, it will be much easier for him to sort out any concerns about what was or was not produced than it would be for Edwards.

<u>RFPs #3, #4, and #5 Should Be Quashed.</u>

RFPs #3, #4, and #5 seek to force Edwards to produce various discovery materials associated with the case *Epstein v. Edwards*, Case No. 50-2009 CA 040800XXXXMBAG (15th Judicial Cir., West Palm Beach, Florida).  That case has been in litigation for seven years, Edwards Decl. at ¶ 12, and a substantial number of documents are involved.  Many of the subjects in the case overlap with subjects over other litigation, including the on-going *Jane Doe 1 and Jane Doe 2 v. United States* case and the now-closed *Edwards and Cassell v. Dershowitz* case.  *Id.*  Because of this overlap, and because Edwards was a party to that litigation and not the lawyer, Edwards has not maintained a separate file for the *Epstein v. Edwards* case.  *Id.*  It would

not only be unduly burdensome, but it would be impossible to try and identify which discovery materials relate only to the *Epstein v. Edwards* case. *Id.*

Moreover, rather than burden Edwards with the need to sort through his various files on Epstein-related cases, Defendant Maxwell has a straightforward way to obtain materials concerning the *Epstein v. Edwards* case. She is currently in a joint defense agreement with her former boyfriend and close associate, Jeffrey Epstein. Edwards Decl. at ¶ 13. It would obviously be much easier for Defendant Maxwell to obtain the materials in question from Epstein or one of his dozen attorneys, since any production of materials to her will be under the joint defense agreement and thus not run any risk of waiver of privilege or protections. Moreover, Epstein is a billionaire who has vast wealth, represented by many lawyers,[2] and presumably is well-situated to help provide materials to defendant Maxwell. In light of these facts, the clear inference is that Maxwell has chosen to subpoena Edwards to produce these materials, because it will burden him and make it more difficult for him to represent his client, Ms. Giuffre, in her lawsuit against Maxwell. The Court should not approve such tactical targeting of opposing counsel for burdensome subpoenas.

RFP #6 Should be Quashed.

The subpoena also asks Edwards produce documents provided in discovery from the case of *Jane Does #1 et al. v. United States* (S.D. Fla.) – i.e., correspondence between Epstein's defense attorneys and the Government concerning the plea arrangement to be struck between the two. This request involves a substantial number of documents (Edwards Decl., Ex. 3 at ¶ 6-7) and should be quashed as well.

---

[2] For confirmation of this point, the Court need only look at the counsel of record listings for Epstein in the CVRA case and the *Epstein v. Edwards* case.

The discovery materials Defendant Maxwell seeks are currently under a protective order barring further dissemination of the materials. The order was entered by this Court (Judge Marra) in the underlying case. *Does v. United States*, DE 326 at 4. The order allowed Edwards and Cassell to identify relevant document and then file them in public pleadings. But other documents provided by the Government in discovery remain under a protective order.

On February 10, 2016, Edwards and Cassell filed a sixty-page motion for summary judgment in the case that included 140 exhibits. DE 361 & 362, No. 9:08-cv-80736-MARRA. That filing is not sealed and makes the most significant parts of the correspondence between Epstein and the Government available to the public, including Maxwell. But any other materials remain under Judge Marra's protective order. Accordingly, before Edwards could even have the option to release the materials that the Government has provided to him as an attorney in the case, Defendant Maxwell would have to approach the Court in that case (Judge Marra) and seek a modification of the protective order.

The fact that Defendant Maxwell is trying to obtain documents from Edwards that are under protective order orchestrated by her former boyfriend (and current "common interest" partner) Epstein only serves to demonstrate why the subpoena to Edwards is harassing. Defendant Maxwell could have simply asked Epstein to provide the materials (or, alternatively, subpoenaed the materials directly from Epstein). Epstein's own materials are not under a protective order. It is only the materials provided to Edwards (and his co-counsel Edwards) during discovery that are under the protective order. Epstein and his attorneys have, of course, all the correspondence involving their plea discussions.

In addition, of course, the Government has all of the correspondence. The materials at issue originated with the Government – which, after Epstein, is the most natural place from which to seek production.

The only apparent reason for seeking these materials from Edwards rather than Epstein (or the Government) is to burden Edwards.  Seeking discovery of Edwards "merely for the sake" of creating a burden clearly constitutes a grounds for quashing the subpoena.  *See Jones*, 219 F.R.D. at 78.  And in considering the burden involved, the Court should consider the fact that Edwards has been working on this matter, as one of only two principal attorneys, on a pro bono basis for nearly eight years.  Edwards Decl. at ¶¶ 14-15.  Recently, Supreme Court Justice Sonia Sotomayer decried the lack of pro bono legal counsel available to provide legal services to those unable to afford them.  *See, e.g.,* Tony Mauro, *Sotomayor Urges Mandatory Pro Bono for All Lawyers*, The National L.J., May 17, 2016.[3]  A pro bono attorney should not be forced to spend additional time and resources responding to a burdensome discovery requests for the materials that can be more easily collected elsewhere.

RPFs #8, #9, and #10 Should be Quashed.

The eighth, ninth, and tenth RFPs seek engagement letters between the Plaintiff in the case (Virginia Giuffre) and Edwards as her attorney, as well as joint defense or common interest agreements relating to Ms. Giuffre.  Defendant Maxwell can seek – and has sought – production of any such documents in the case directly from Ms. Giuffre.  *See* Edwards Decl., Ex. 3 at ¶¶ 16-17.  There is no basis for a duplicative request to Ms. Giuffre's attorney, a non-party to the action.

Moreover, it is somewhat remarkable that Defendant Maxwell believes she is entitled to receive any joint defense agreement involving Edwards.  When asked to produce her joint defense agreement with Epstein, she objected that she did not have to produce such agreement

---

[3]    Available    at    http://www.nationallawjournal.com/id=1202757812765/Sotomayor-Urges-Mandatory-Pro-Bono-for-All-Lawyers

because she claimed it was privileged.  *See* Edwards Decl., Ex. 5 at 7 (responses to requests 6 and 7).

Numerous district courts have granted motions to quash subpoenas that seek documents or information from a non-party when the information is available from a party.  In *Moon*, the court found that the document requests in the plaintiffs' subpoena to a non-party "all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from [the nonparty]."  *Moon*, 232 F.R.D. at 638.  The same can be said here, on these RFPs should be quashed.

RFPs #10 and #11 Should be Quashed.

The tenth and eleventh document requests seek documents concerning Edwards' work forming or on behalf of Victims Refuse Silence, Inc. (VRS).  This is an organization on which Ms. Giuffre serves as a board member.   Here again, Defendant Maxwell has served a subpoena on the VRS itself for various records.  *See* Edwards Decl., Ex. 6.  It is hard to understand what relevance any additional documents relating to Edwards could have to the case.

In addition, the requests seek such things as document relating to "[y]our formation of" VRS.  This request would obviously seek work relating to Edwards' actions as a lawyer for his client and thus would be attorney-client protected. See Edwards Decl. at ¶ 18.

Similarly, the request seeks such things as "disclosures made by You to . . . any person associated with VRS."  Edwards' client, Ms. Giuffre, is plainly a person "associated with VRS," *id.* at ¶ 19, so this request seems to ask for all communications between Edwards and his client, unrestricted as to time and subject.   Clearly, these requests are overbroad and unduly burdensome.

RFP #12 Should be Quashed.

The twelfth document request seeks "documents relating to any disclosures made by You [to] Virginia Roberts Giuffre, or consents provided to You by Virginia Giuffre, pursuant to any of the Florida Rules of Professional Conduct." Any such materials would involve confidential attorney-client communications. Edwards Decl. at ¶ 15. But more important, these materials would appear to have nothing to do with the lawsuit at hand. Instead, it appears that counsel for Maxwell seek to embark on a fishing expedition regarding opposing counsel's compliance with his ethical obligations to his clients. Those concerns belong to the client, not to opposing counsel. And they are certainly not relevant to the defamation actions between Ms. Giuffre and Ms. Maxwell. The request should be quashed.[4]

RFP #13 Should be Quashed.

RFP #13 seeks all documents "concerning any investigation by any law enforcement agency that refer to Ghislaine Maxwell." This issue, too, has been heavily explored in the underlying case in the Southern District of New York. Part of this request appears to be an effort by Defendant Maxwell to ferret out the scope of any *current*, on-going law enforcement investigation into Maxwell's crimes – presumably with an eye to preventing that investigation from being successful. With regard to these documents about a current investigation, Ms. Giuffre has asserted a public interest privilege from being forced to disclose that information. Documents related to that request have been submitted to Judge Sweet in camera, and he is currently evaluating whether to order their production. *See Giuffre v. Maxwell*, DE 128 at 1. If Judge Sweet refuses to order their production, it is hard to see why Defendant Maxwell should be able to do an "end run" around that ruling by seeking the same documents from Edwards. On

_____

[4] Aspects of the eleventh request for production also seem to relate to irrelevant legal ethics questions. For this reason as well, RFP #11 should also be quashed.

the other hand, if Judge Sweet turns over documents the documents about Ms. Giuffre's cooperation with the law enforcement investigation to Defendant Maxwell, it is hard to understand why she would need additional documents of the same character from Edwards.

Other parts of this request are clearly overbroad as they seek information about *past* law enforcement investigations.   For example, the request seeks materials regarding a law enforcement agency that "refer" to Ghislaine Maxwell.  The CVRA action involves not only Jeffrey Epstein, but also his potential "co-conspirators," who all apparently received immunity under the non-prosecution agreement that was challenged in his case.  All of the documents in the CVRA case thus, in some sense, refer to defendant Maxwell.  And, as explained above, apart from materials that have been publicly filed, the remaining correspondence is under a protective order from Judge Marra.  Here again, defendant Maxwell can far more easily obtain these materials from her common interest partner Epstein, since *his* own personal copies of these materials are not under a protective order.

RFP #15 Should be Quashed.

RFP #15 seeks documents relating to "any journalist, reporter, producer, author, director, or any employee or agent of the same" connected to Virginia Giuffre, Ghislaine Maxwell, or Jeffrey Epstein.  This request is hopelessly overbroad, since the categories of people included (e.g., any "author" or "journalist" or "agent of the same") do not lend themselves to immediate and narrow identification.   The request is also unbounded as to time, and thus sweeps in materials remote from the *Giuffre v. Maxwell* case.  For example, Edwards began working on a separate pro bono case – *Jane Doe 1 and 2 v. United States* – nearly eight years ago, in July 2008.  Edwards Decl. at ¶¶ 14-15.  Defendant Maxwell appears to be seeking media contacts related to that case, since anything in that case clearly "relates" to Jeffrey Epstein and the non-prosecution agreement Epstein was trying to obtain.  Edwards Decl. at ¶ 21.  Since 2008, the

CVRA case filed by Cassell and Edwards has attracted broad attention from Congress,[5] legal scholars,[6] as well as the media.[7]   To answer RFP #15, Edwards would have to review more than 200,000 emails he sent and received during that time.   *See* Edwards Decl. at ¶ 22-23.   He would then need to determine which of these emails were subject to (for example) work-product protection.   The burden imposed on him would clearly be substantial. *Id.* at ¶ 23.

The burden imposed on Edwards is an undue burden because Defendant Maxwell has far more direct ways to proceed.   Ms. Giuffre, the plaintiff in the underlying action, has been (or could have been) questioned extensively about her interactions with the media, both during her deposition and through discovery propounded to her.   In light that fact, it is not clear how Edwards' communications have any additional relevance to the *Giuffre v. Maxwell* lawsuit.   Ms. Giuffre has sued Defendant Maxwell because she (Maxwell) made defamatory statements – not vice versa.   So it is hard to see even how communications Ms. Giuffre may or may not have had with the media would be important to the case, much less how communications her attorney, Edwards, would be relevant.   Under the rules, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's *claim or defense*." Fed. R. Civ. P.  26(b)(1) (emphasis added).   Ms. Maxwell has made no claim against Ms. Giuffre.   And with regard to her defenses, the Court can examine her answer to the complaint to see that none of them relate to any

---

[5]  Responding to the lack of notice given to the victims of the Epstein agreement, Congress recently amended the CVRA to insure that in the future crime victims receive notice of any non-prosecution agreement entered into by the Government.  *See* Pub. L. 114-22, Title I, § 113(a), (c)(1), May 29, 2015, 129 Stat. 240, 241 (adding 18 U.S.C. § 3771(a)(9) to give crime victims "[t]he right to be informed in a timely manner of any plea bargain or deferred prosecution agreement).

[6]  *See generally* Paul G. Cassell, Nathanael J. Mitchell & Bradley J. Edwards, *Crime Victims' Rights During Criminal Investigations? Applying the Crime Victims' Rights Act before Criminal Charges are Filed*, 104 J. Crim. L. & Criminology 59 (2014).

[7]  Abby Goodnough, *Questions of Preferential Treatment Are Raised in Florida Sex Case*, N.Y. Times, Sept. 3, 2006, at A19; Michele Dargan, *Feds Say They Treated Epstein Victims Fairly*, Palm Beach Daily News (April 8, 2011).

interactions that Edwards may have had with the media.  *Giuffre v. Maxwell*, DE 54 at 8-10 (listing Maxwell's affirmative defenses).

As noted above, federal district courts have quashed subpoenas that seek irrelevant information.  "[C]ourts have incorporated relevance as a [Rule 45] factor when determining motions to quash a subpoena," *Moon*, 232 F.R.D. at 637, and have "discretion to circumscribe discovery even of relevant evidence by making 'any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Jones*, 219 F.R.D. at 74.  District courts, such as in *Moon* and *Jones*, have quashed subpoenas that seek to obtain information outside the bounds of relevance to claims or defenses in the case. The *Moon* court quashed a subpoena that sought irrelevant information through overbroad requests for documents and information.  *Moon*, 232 F.R.D. at 637-638.  In *Moon*, the plaintiff's claims related to an import agreement that covered a three-year period.  *Id*. at 637.  Plaintiff's document requests to the non-party in the subpoena at issue, however, sought documents reaching back over a 10-year period and sought information relating to the non-party's commercial business with other non-parties.  The court weighed "the burden to [the non-party subpoena recipient] against the value of the information to [the issuer of the subpoena]" and found that "the subpoena imposes an 'undue burden' on the nonparty."  *Moon*, 232 F.R.D. at 637.

The *Jones* court made a similar calculation, quashing a subpoena to take the deposition of a non-party upon a finding that the defendant's subpoena to the non-party sought information that "is not relevant to any issue in this case."  *Jones*, 219 F.R.D. at 77.  In *Jones*, the plaintiff sought enforcement of an agreement with the defendant and the defendant argued that the plaintiff repudiated the agreement, *id*. at 72-74, and issued the subpoena to Mr. Clinton who, the defendant argued, had insisted that the plaintiff repudiate the agreement or had an understanding

18

that she had done so, *id*. at 77.  The court quashed the subpoena, finding that there was no allegation that Mr. Clinton had any non-privileged information regarding whether or not the plaintiff in fact **did** repudiate the agreement, which was the relevant issue in the matter.  *Id*.

As in the *Moon* and *Jones* cases, defendant Maxwell has propounded an extraordinarily broad subpoena that imposes a significant burden on Edwards that ultimately seeks information that is not relevant to any claims or defenses in this matter.  The Subpoena should be quashed.

RFPs #19 and #20

Requests number 19 and number 20 seek "[a]ny letter or communication to [or from] you to any witness or prospective witness in *Giuffre v. Maxwell*."  Both sides have identified numerous "prospective witnesses" in the case, probably totaling more than one hundred persons.  Moreover, persons who have been identified as potential witnesses in the case include not only Mr. Edwards' client, Ms. Giuffre, but also other persons with whom he has interacted, such as his co-counsel.  Edwards Decl. at ¶ 24.  Most important, however, like the other requests that the subpoena makes, this request appears to be exclusively designed to burden Mr. Edwards.  Defendant Maxwell is certainly free to depose any witness about anything that may or may not have been said to the witness by *any* person – including Mr. Edwards.  There is no good reason to force Mr. Edwards to have to produce such materials.

III.    **Edwards Reserves the Right to Raise Other Objections.**

For all the reasons just explained, the Court should quash the subpoena issued to Edwards in its entirety under Fed. R. Civ. P 45(c)(3)(A)(iv).[8]  If for any reason the Court finds that some or all of the subpoena survives this motion to quash, Edwards would then respectfully request any opportunity to raise such other general and specific objections to the subpoena as may be

---

[8]  Without waiving any protections that might otherwise exist (including attorney-client privilege or work-product protection), Cassell does not believe that he possesses any documents responsive to RFP #10, #12, and #13.  Cassell does not believe that he possesses any documents responsive to RFP #14, if it is understood to be seeking "original" photographs rather than those that have previously been reprinted.

appropriate, including attorney-client privilege, work-product protections, public interest privilege and common-interest privilege.  For the aforementioned reasons, it is wholly inappropriate for counsel to utilize this subpoena to virtually request the entirety of Edwards' volume of case files relating to Jeffrey Epstein, Alan Dershowitz, or the investigation into co-conspirators of Jeffrey Epstein.  Additionally, it is entirely unreasonable to provide a mere ten days to respond to a subpoena of such magnitude.  In the event that the Court does not quash the subpoena in its entirety, non-party Edwards requests a reasonable amount of time to respond to any request that survives this motion.

## CONCLUSION

For the forgoing reasons, Edwards respectfully requests that this Court grant the motion to quash the Subpoena commanding the production of documents by Edwards.  In the alternative, Edwards requests that this Court enter a protective order barring enforcement of Maxwell's Subpoena.

## Certification Under S.D. Fla. L.R. 7.1

Based upon prior communications, it is clear that the parties cannot resolve the issues delineated herein without court intervention.  On June 13, 2016, Plaintiff nonetheless attempted to meet and confer with defense counsel but was unable to reach him before the deadline for filing this motion.  Counsel will continue to communicate and will promptly notify the Court of any agreements reached to resolve or narrow any of the issues raised herein.

I HEREBY CERTIFY that, on June 13, 2016, a true and correct copy of the foregoing was sent by e-mail to Laura A. Menninger, Esq., and Jeffrey S. Pagliuca, Esq., attorneys for Ghislaine Maxell, Haddon, Morgan and Foreman, P.C., 150 East 10th Avenue, Denver, CO 80203 (lmenninger@hmflaw.com).

/s/ Jack Scarola
Jack Scarola
Florida Bar No.: 169440
Attorney E-Mail(s):  jsx@searcylaw.com and
                mep@searcylaw.com
Primary E-Mail: _scarolateam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax:    (561) 383-9451

*Attorney for Non-Party Respondent Bradley J. Edwards*