Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:    303.831.7364
Fax:        303.832.2628
jpagliuca@hmflaw.com

Denise D. Riley (# 160245)
Riley Law PLLC
2710 Del Prado Blvd. S., Unit 2-246,
Cape Coral, FL 33904
Phone:  303.907.0075
denise@rileylawpl.com

*Attorneys for Ghislaine Maxwell*

---

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

---

| | |
|---|---|
| In re: SUBPOENA TO BRADLEY J. EDWARDS<br><br>Underlying case:<br><br>VIRGINIA L. GIUFFRE, Plaintiff<br><br>v.<br><br>GHISLAINE MAXWELL, Defendant<br><br>No. 15-cv-07433-RWS (S.D.N.Y.) | **RESPONSE OF GHISLAINE MAXWELL TO BRADLEY J. EDWARDS' MOTION TO QUASH SUBPOENA, OR IN THE ALTERINATIVE, FOR A PROTECTIVE ORDER**<br><br>Case Number 0:16-mc-61262-JEM |

---

Defendant Ghislaine Maxwell's files this response to non-party Bradley J. Edwards

Motion to Quash Subpoena or, in the alternative, for a protective Order, and states as follows:

### BACKGROUND FACTS RELEVANT TO THE SUBPOENA

The Southern District of New York case in which the Subpoena was issued arises directly

from a pleading filed in a case by non-party Bradley Edwards ("Edwards") and his co-counsel

Paul Cassell ("Cassell") on behalf of the Plaintiff, Virginia Giuffre ("Plaintiff" or Ms. Giuffre"). As explained by Edwards, he and Cassell represented the Plaintiff in this action in a separate case pending in the Southern District of Florida, *Jane Doe 1 and Jane Doe 2 v. United States*, No9:08-cv-80736-MARRA (S.D. Fl.) (the "CVRA" Case).  It is a pleading filed in the CVRA case that spurred the instant litigation, as well as a contention litigation between Edwards and Cassell and Alan Dershowitz.

<u>The CVRA Case</u>

In the CVRA Case, Edwards (starting in 2011) and Cassell (starting in May 2014) represented Plaintiff in attempting to obtain joinder in the pending action.  On December 30, 2014, Edwards and Cassell filed a pleading titled "Jane Doe #3 and Jane Doe #4's Motion Pursuant to Rule 21 for Joinder in Action" in the CVRA Case. Pagliuca Decl., Ex. A (the "Joinder Motion").  The Joinder Motion contained a number of allegations on behalf of "Jane Doe # 3," the Plaintiff in this case.  The allegations include that "Epstein also sexually trafficked the then-minor Jane Doe [#3], making her available for sex to politically-connected and financially-powerful people."  The "politically-connected and financially powerful people" identified by Edwards and Cassell by name in the Joinder Motion as having had sexual relations with Jane Doe #3 were Prince Andrew, Duke of York ("Prince Andrew"),  Ms. Maxwell, Jean Luc Brunel ("Brunel") and Alan Dershowitz ("Dershowitz"). *Id.* at 3-6.[1]

---

[1] The judge in the CVRA case subsequently struck these allegations, stating "[a]t this juncture in the proceedings, these lurid details are unnecessary to the determination of whether Jane Doe 3 and Jane Doe 4 should be permitted to join Petitioners' claim that the Government violated their rights under the CVRA. The factual details regarding with whom and where the Jane Does engaged in sexual activities are immaterial and impertinent to this central claim (i.e., that they were known victims of Mr. Epstein and the Government owed them CVRA duties), especially considering that these details involve non-parties who are not related to the respondent Government. These unnecessary details shall be stricken."  *See* Pagliuca Decl., Ex. C.

Following the Joinder Motion, Dershowitz made numerous public appearances in which he vigorously denied the allegations, stating that Edwards and Cassell "are lying deliberately," and that if Edwards and Cassell "had just done an hours' worth of work, they would have seen she [Giuffre] is lying through her teeth."  *See* Pagliuca Decl., Ex. B at 9-10.

Ms. Maxwell's denial and *Giuffre v. Maxwell*

Ms. Maxwell responded to the contents of Joinder Motion filed by Edwards and Cassell in a statement written by her press agent stating:

> Each time the story is re told it changes with new salacious details about public figures and world leaders and now it is alleged by Ms. Roberts [the Plaintiff] that Alan Dershowitz is involved in having sexual relations with her, which he denies.

> Ms. Roberts's claims are obvious lies and should be treated as such and not publicized as news, as they are defamatory.

*See* Pagliuca Decl., Ex. D.

Almost ten months later, Ms. Giuffre sued Ms. Maxwell based on this simple denial, claiming that denial of the claims made concerning her and other prominent figures such as Alan Dershowitz constituted defamation because she had been called a "liar" by Ms. Maxwell.

*Epstein v. Edwards, et. al*, 2009 CAD408-MB

In 2009 Mr. Epstein sued Mr. Edwards and his former law partner, Scott Rothstein. Epstein accused Edwards in participating in a Ponzi scheme in which Edwards and Rothstein manufactured sexual abuse claims against Mr. Epstein and solicited investors to purchase a position of the project recovery for the false claims.  *See* Pagliuca Decl., Ex. Q.  This litigation is apparently ongoing.

The Dershowitz Case

In the interim, on January 6, 2015, Edwards and Cassell initiated litigation against Dershowitz - the Dershowitz Case.  *See* Pagliuca Decl., Ex. E.

In the Dershowitz Case, Edwards and Cassell sued Dershowitz for defamation claiming that Dershowitz's public statements – that they and their client were lying and that they failed to investigate their client's claims – were false. The Complaint by Edwards and Cassell alleged that "[i]mmediately following the filing of what Dershowitz knew to be an entirely proper and well-founded pleading, Dershowitz initiated a massive public media assault on the reputation and character of Bradley J. Edwards and Paul G. Cassell accusing them of intentionally lying in their filing, of having leveled knowingly false accusations against Dershowitz without ever conducting any investigation of the credibility of the accusations, and of having acted unethically to the extent that their willful misconduct warranted and required disbarment."  Pagliuca Decl., Ex. E, ¶ 17.

Edwards and Cassell claimed Dershowitz's statements that "Edwards and Cassell failed to minimally investigate the allegations advanced on behalf of their client [Virginia Giuffre] and even that they sat down with her to contrive the allegations" were false. Pagliuca Decl., Ex. B at 9.  Notably, Ms. Giuffre has never sued Dershowitz for defamation despite the fact that Dershowitz went on multiple national television programs and conducted interviews with national publications calling Ms. Giuffre a "serial liar."

Beginning in the middle of 2014, prior to the Joinder Motion and the Dershowitz Case, Edwards, Cassell and David Boies represented Plaintiff "investigation into potential legal actions."  *See* Pagliuca Decl.*,* Ex. F, ¶ 3f.

Throughout the course of the Dershowitz litigation, and despite claiming to be counsel to Plaintiff in the CVRA case and in this case, Plaintiff, Edwards and Cassell (among others) were parties to a joint defense agreement relating to the Dershowitz Case.  Pagliuca Decl., Ex. G.

3

On or about April 8, 2016, Edwards and Cassell settled their case with Dershowitz. In a joint press release, Edwards and Cassell stated "Edwards and Cassell maintain that they filed their client's allegations in good faith and performed the necessary due diligence to do so, and have produced documents detailing those efforts." *See* Pagliuca Decl., Ex. O, p.1. The press release continues in stating that it was a ***"mistake"*** to have filed sexual misconduct allegations against Dershowitz citing, among other things, "the records and other documents produced by the parties." *Id.* at 2.

After the settlement agreement was finalized and the press release issued, Edwards and Cassell moved the Court in this case to permit them to appear as counsel on behalf of Ms. Giuffre. The Court permitted their appearance as counsel of record, but only on the condition that they certify that the Dershowitz litigation had been fully resolved and that they were not parties to any action related to the allegations in the Joinder Motion.

## ARGUMENT AND MEMORANDUM OF LAW

"[T]he burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant." *United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979). "A party contending that a subpoena should be quashed pursuant to Rule 45(c)(3)(A)(iv) must demonstrate that compliance with the subpoena would be unduly burdensome." *Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05CIV.6430(VM)(JCF), 2007 WL 4410405, at *1 (S.D.N.Y. Dec. 17, 2007). Edwards has failed to meet this burden.[2]

---

[2] Edwards lists six "reasons" he believes the subpoena should be quashed. Items 2) and 3) are not recognized objections to a F.R.Civ.P 45 subpoena. Item 4 is factually wrong: the subpoena is returnable within 100 miles of where Mr. Edwards works and lives, indeed, it is the same building in which Mr. Edwards has taken numerous depositions in connection with this case. Item 6 is also false. Ms. Maxwell emailed copies of the subpoenas to all counsel of record on May 20, 2016. *See*, Pagliuca Decl. Ex. R.

## I.      There is no Undue Burden

Edwards' primary argument is that he should be protected from production of key relevant information in this case because he would somehow be "unduly burdened" by having to produce relevant information.  This is simply an incredible claim.  First, Edwards' and his co-counsel Edwards have directly inserted themselves into this and the surrounding matters.  They drafted and filed the improper pleading containing the salacious and unnecessary allegations that prompted Ms. Maxwell's simple denial.  The pleading also prompted Dershowitz' wide spread media campaign calling Ms. Giuffre a liar and Edwards and Cassell unethical and deserving of disbarment.  The Court in the CVRA case struck the allegations because they were both unnecessary and improper.  Edwards and Cassell could have simply chosen to draft a proper pleading, leaving out the sensational allegations, and none of this subsequent litigation would have occurred.  In light of certain actions (like the formation of Victim Refuse Silence) and dates of representation regarding "potential legal action" disclosed in this case, it appears that engendering litigation was the goal of the improper filing.  If Plaintiff was called a liar by those accused, a new case for defamation might arise.  Since any civil claims Ms. Giuffre might have had were time barred or had been settled, creation of a new claims was the only way for Plaintiff and her attorneys to attempt to reopen prosecution and discovery regarding events allegedly occurring over fifteen years ago.  Edwards and Cassell did not just insert themselves into this case, they created it on purpose.

Edwards and Cassell then took the affirmative action of suing Dershowitz, again inserting themselves into the middle of these related actions.  Edwards and Cassell now admit it was a "mistake" to make the allegations against Dershowitz based on documents produced by both

sides in discovery.  Having taken the voluntary action of initiating litigation, any burden imposed

was brought on by Edwards' own affirmative actions.

Edwards also claims that as a non-party, he should not be required to provide information

that is available from a *party* to the litigation because such production is burdensome.  Edwards

is one of many of Plaintiff's named counsel in this matter.  The information sought, however, is

not information that is available to Ms. Giuffre (except via her joint defense agreement with

Edwards and Cassell) and it is also not available to Ms. Maxwell.  Moreover, Edwards' status as

a "non-party" carries little weight here.  As Plaintiff's current attorney and her attorney in

multiple related proceedings and potential litigations, "it was foreseeable that he would be asked

for records related to services he performed for his former client that is now the subject of

litigation." *Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05CIV.6430(VM)(JCF), 2007

WL 4410405, at *1 (S.D.N.Y. Dec. 17, 2007); *see also Schwartz v. New York City Off-Track

Betting Corp.,* Nos. 92 Civ. 1166, 92 Civ. 2768, 1993 WL 42760(S.D.N.Y.1993), ("even if a

nonparty is [ ] entitled to some enhanced protection against disclosure of confidential

information and from burdensome discovery requests, [the subject of the subpoena] is so closely

allied with the [plaintiff] and the information that she possesses is so pertinent that it must be

disclosed".)

Edwards argues that Ms. Maxwell should be required to obtain records from non-party

Alan Dershowitz, burdening a different non-party rather than Plaintiff's own counsel.  This

proposition is not supported by any citation or legal authority.  It is also based on the false

premise of a joint defense agreement between Dershowitz and Ms. Maxwell.  No such agreement

exists.  This fact has been stated numerous times by Ms. Maxwell in her discovery responses and

in multiple pleadings.  The deposition citation from Dershowitz' deposition only confirms this

fact, contrary to Edwards' extremely misleading statements in the Motion to Quash.  As Dershowitz explained, his counsel's instruction not to answer certain questions relating to Ms. Maxwell based on joint defense privilege was based *solely* on Dershowitz' status as Jeffrey Epstein's attorney.  As Epstein's attorney, Dershowitz was required to preserve the joint-defense privilege between his client and Ms. Maxwell, who are parties to a common interest agreement. Specifically, Dershowitz testified "**Q. Are you a party to a common interest agreement with Ghislaine Maxwell? . . . .** A: My understanding is that I am still Jeffrey Epstein's lawyer. Jeffrey Epstein, I understand, has a common interest or joint defense agreement with Ghislaine Maxwell, so I have – my understanding is that I am bound by a common agreement."  Edwards Decl*., Ex. 3, 527:3-17.  The claim that there is a joint defense agreement between Ms. Maxwell and Dershowitz in simply false.

The cases cited by Cassell stand for the proposition that in weighing the burden on a non-party, the court should consider if the information is available from a *party*, not from a different non-party.  There is simply no requirement that a person who may have a common interest agreement must seek documents from that alternative *non-party* source.  Moreover, obtaining the requested information from Plaintiff's own counsel, Edwards, substantially lessens any challenges to authenticity.  The subpoena to Edwards is the best, *least* burdensome, and most cost effective means source for obtaining the information.

Edwards' claim as "pro-bono" counsel to Plaintiff should not be burdened because of the desperate need for bro-bono services in this country is neither relevant nor accurate.  *See* Pagliuca Decl. Ex. H.  Plaintiff is seeking over $30,000,000 in compensatory damages and $50,000,000 in punitive damaged in this matter.  *See* Pagliuca Decl*.*, Ex. I.

## II.      The Information Sought is Highly Relevant

Edwards' secondary argument is that the Court should consider the relevance of the information sought in reviewing the Rule 45 Motion.  Of course, this is not one of the four listed reasons for quashing or modifying a subpoena under Rule 45(3).  But, the information sought is highly relevant to this single count defamation claim.  First, the subpoena seeks the documents produced in discovery in the Dershowitz Case.  These are the very documents that Edwards and Cassell reviewed that led them to conclude it was a "mistake" to have accused Dershowitz of sexual misconduct.  One of the most shocking pieces of evidence is a recently discovered voice mail from that Sharron Churcher, the tabloid reporter who first published stories about Plaintiff, **to Paul Cassell** in February of 2015.  In that voice recording she states that based on information in her files "I think the FBI affidavit is pretty close to perjury."[3]  Ms. Maxwell's statement that the accusation against Dershowitz (and other unidentified public figures and world leaders) were "obvious lies" is the entire basis of this litigation.  The information leading Edwards and Cassell to the same conclusion go beyond mere relevance; they may be dispositive.

To the extent the relevance argument is raised with respect to specific requests, it will be discussed in turn below.

## III.     Application to Specific Request for Production

<u>RFP 1& 2 – Requests for documents Produced to or by Edwards in the Dershowitz litigation</u>

Notably, there is no question that these documents are highly relevant.  Edwards' argument that the document can or should be sought from Dershowitz based on an alleged joint defense agreement is simply wrong.  As fully addressed above, no such agreement exists.  And,

---

[3] Since this is a wave file, it cannot be attached an exhibit.  This voicemail recording can be sent to the court via email.

there is no basis for claiming documents must be sought through a different non-party who may have the same information.  The subpoena to Edwards, Plaintiff's own attorney who is actively involved in this litigation, is the least burdensome and least expensive source for obtaining the information.

The claims that it would somehow be unduly burdensome to produce records from the Dershowitz litigation is spurious.  The requested records are those *actually produced* in the Dershowitz litigation.  Edwards need not cull his records and determine what he produced to his counsel that was subsequently produced in the litigation.  He simply needs to pick up the phone and ask his attorney in the Dershowitz case (and counsel in this matter), Jack Scarola, to provide him a production set of the documents produced in the Dershowitz case, as well as those produced to Edwards in the Dershowitz case.  *Romano v. SLS Residential Inc.*, 298 F.R.D. 103, 111 (S.D.N.Y. 2014) ("Since those documents are in the custody of defendants' attorney, they are within the control of the client, and hence can be reached by a court order under Rule 37(a).")  It strains logic to claim that this is burdensome in light of modern litigation and technology, where the production files in litigation are routinely produced electronically and stored in electronic document management systems, requiring a few clicks of a mouse to copy production files.  There is no basis to quash or modify Requests 1 and 2, and production should be compelled.

   RFP 3, 4, and 5– Documents Produced in the *Epstein v. Edwards* Litigation

Again, Edwards claims that locating the responsive documents in an ongoing litigation would be "unduly burdensome."  Edwards offers no factual support for this claim.  Like the other litigations in which Edwards is or has been involved, Mr. Edwards can simply request the information from his lawyer.  Presumably, this information is in a database that can be easily searched and duplicated.

RFP 6 – Documents Produced in the CRVA Litigation

First, the existence of a protective order in the CVRA case is irrelevant.  As counsel for Ms. Giuffre, Edwards is well aware that there is a blanket protective order in place in this case. As the judge in this case has already ruled, production from other cases subject to similar protective orders are fully protected by the protective order in place in this case.  The existence of a protective order in the CVRA action cannot be the basis for non-production.  *See* Pagliuca Decl., Ex. P.

Second, Edwards' argument that the documents produced in the CVRA litigation cannot be produced because of a protective order appears to be incorrect.  Edwards cites to a Court order *denying* a motion for protective order, and noting that no party had ever filed a blanket protective order that would be consistent with its prior ruling.  *See* Pagliuca Decl., Ex. J.  Going to the referenced ruling, the Court entered an Order that would permit for a blanket protective order, and asked the parties to modify the previously proposed protective order for consistency with its ruling.  *See* Pagliuca Decl., Ex. K.  Reviewing the Proposed Protective Order, there is a mechanism for permitting production of confidential materials pursuant to a subpoena, which simply required notifying the other parties of the subpoena.  *See* Pagliuca Decl., Ex. L.  Indeed, the CVRA docket is replete with motions for and denials of protective orders, and appeals of the same.  It seems there is no blanket protective order, and even if there were it contemplates that documents can be turned over pursuant to a subpoena.

Next, Edwards' claim that Ms. Maxwell can or should seek the documents from a different non-party, Jeffery Epstein or the federal government, is also without merit.  First, as discussed above, there is no such requirement.  Second, Epstein is not a party to the CVRA case, and presumably not in possession of all of the documents produced.  Third, it is not a "natural"

place to seek production.  Epstein remains the center of numerous litigation, not the least of which is the CVRA litigation.  When subpoenaed, Epstein has, without exception, moved to quash and invoked his Fifth Amendment privilege. Requesting documents from Epstein would likely result in a motion to quash, as well as an inability to authenticate any production.  The most natural place to seek these documents is from the Plaintiff's counsel, who has full access to the documents and would presumably be able to agree to authentication in any proceeding.

### RFP 7, 8 and 9 – Engagement Letters and Joint Defense Agreements

These documents had been requested from Plaintiff prior to the service of the subpoena to Edwards, but had not yet been produced.  They were the subject of a motion to compel.  They have since been compelled and produced.  As such, Request 7, 8 and 9 are withdrawn to the extent the documents have been produced.  To the extent there are any joint defense agreements to which Cassell is a party to that have *not* been produced in this matter, the request stands, and the documents should be produced or logged as privileged.

### RFP 10 & 11 – Document Regarding Victims Refuse Silence

Victims Refuse Silence ("VRS") is an organization formed by Ms. Giuffre's counsel on December 23, 2014, a mere seven days prior to the Joinder Motion.  It was created in an effort to claim that Ms. Giuffre was in the "profession" of advocating for victim's rights for sexual abuse victims.  The point of this organization was the set-up for a defamation case – denial of the sex abuse claims in the soon-to-be-filed Joinder Motion might equate to defamation in Ms. Giuffre's newly created profession, thus allowing the pleading (but not proof) of defamation per se.  In truth, Ms. Giuffre has not held a job outside the home since 2006.

The requests seek information held by Edwards that may reveal this chronology.  To the extent any communications are privileged, they can be logged as such.  To the extent they are

documents that will be produced by Victims Refuse Silence (who Edwards also allegedly represents) under the VRS subpoena, Edwards simply needs to state that they are being provided from that source.  If, however, there are documents relating to this VRS that are not in VRS's control, such as emails Edwards may have sent to third parties relating to VRS including the idea for, or formation, operation or publicity of the organization, the documents are relevant and must be produced.

### RFP 12 – Disclosures

The attorney-client privilege primarily protects "those attorney to client communications which would have a tendency to reveal the confidences of the client." Kenneth S. Broun, McCormick on Evidence § 89 (6th ed.2006); see also Restatement (Third) of Law Governing Lawyers § 69(d) (2000) ("The attorney-client privilege protects only the content of the communication between privileged persons"). "Courts have consistently held that the general subject matters of clients' representations are not privileged." *United States v. Legal Servs. for N.Y.C.*, 249 F.3d 1077, 1081 (D.C.Cir.2001); see also *In re Grand Jury Subpoena,* 1345 204 F.3d 516, 520 (4th Cir.2000) ("[T]he identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege."). Courts have also frequently required disclosures of the general subject matter of communications without any indication that they would implicate the attorney-client privilege or that they raise any conflict with the privilege. *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129–30 (9th Cir.1992).

Ms. Maxwell is not seeking any communications that are subject to an attorney client privilege. To the extent Mr. Edwards claims privilege with regard to any responsive document it can be logged as such.

RFP 13 – Investigations by Law Enforcement Agencies

The issue concerning communications regarding purported currently pending, unidentified law enforcement investigations was determined by the Court in the Southern District of New York on June 21, 2016, after the Edwards subpoena was issued. As such, the request as it pertains to any presently active, unknown and undisclosed alleged law enforcement investigation is withdrawn.

Edwards correctly notes that information about *past* investigations that refer to Ms. Maxwell *have not* been produced in this litigation. The objection to the request for this information is highly ironic. In Ms. Giuffre's most recent Rules 26 disclosures, she specifically identifies these as relevant documents that she plans on using in support of her claim or defense. Specifically, the Rule 26 disclosures identify "All files held by the Palm Beach Police Department or the Palm Beach State Attorney's office which are publically available, " "All evidence obtained by the Federal Bureau of Investigations which relate in any way to Jeffrey Epstein or Ghislaine Maxwell," "All 302 statements that relate in any way to Jeffrey Epstein or Ghislaine Maxwell" and "All evidence obtained by the FBI or United States Attorney's office by or through the criminal investigation of Alfredo Rodriguez." *See* Pagliuca Decl., Ex. I, p. 16.

Despite the *obligation* to produce these documents under Rule 26, Plaintiff has not produced the documents. *See* Fed. R. Civ. P. 26(a)(2) (requiring identification and *a copy* of all documents a party may use to support its claims or defenses). Ms. Maxwell's counsel has issued repeated and numerous requests for production. Edwards, one of Ms. Giuffre's multiple counsel, has ready access to these documents, and could easily produce the same. Plaintiff, Edwards and

all of his co-counsel have refused to produce the documents.  Yet, Edwards seeks to quash this subpoena, refusing to produce the very document his client claims she plans on relying on to support her claims or defenses.[4]

This is one of the more absurd examples of how Plaintiff and her attorneys have tied a Gordian knot of overlapping litigations, client representations and joint defense agreements attempting to strategically leverage one case though another, but refusing to disclose damning information based on attorney-client communications or attorney work product in an effort to obstruct discovery.  Simply because Edwards may possess this information because of his participation in another matter, Plaintiff and her counsel cannot fail to produce the documents or attempt to gain a tactical advantage by selectively withholding information, then disclosing it when it suits their need.

There is no claim that this information is privileged. The Protective Order in this case covers any concern regarding the protective order in the CVRA case, which does not appear to actually exist, or permits production when under subpoena. Plaintiff – Edwards' client – intends to rely on the very information requested.  There is simply no reason to quash this request.

RFP 15[5] – Edwards' Commination with the Press

Edwards' objects to the production of communications with the press regarding Ms. Giuffre, Ms. Maxwell or Epstein.  The only arguments raised are relevance and alleged undue burden.

---

[4] There is an argument to be made that these documents are in Plaintiff custody or control because she could demand them from her attorney.
[5] Based on the failure to address requests number 14, 16, 17, and 18 it is presumed that Edwards has no objection to, and intends to comply with, the subpoena on these requests.

The information requested is clearly relevant to this matter.  The core of this case is that Ms. Giuffre has, over time, added to and sensationalized her claims, fabricating people, names, details and event that never occurred.  These allegations were incorporated into the Joinder Motion by Edwards and Cassell.  Ms. Maxwell called some of these claims obvious lie.

Ms. Giuffre's motivation was profit.  Her intent was to write a fictional book, selling the sensational lies by dropping names of famous, well know, politically powerful, and influential individuals at the appropriate times to generate interest in what she hoped to be a bestselling novel.  Discovery to date has shown that as part of the ploy to generate interest in Ms. Giuffre's book, Ms. Giuffre and her counsel have strategically employed communications to the press, leaking information when they thought it would help generate interest in her book.  *See* Pagliuca Decl., Ex. N.  As discussed above, Cassell himself received a call from a member of the press stating she has information in her files showing the FBI affidavit is close to perjury.  Obviously, this is a critically relevant communication.  Discovery produced in the underlying litigation reflects that Mr. Edwards has had similar conversations with the media.

As Giuffre's counsel, any communication he had with the media attempting to sensationalize a case about events that allegedly happened over 15 years ago are directly relevant to: a) Plaintiff's fabrication of events over time; b) the motive for the fabrication of the events; and c) any involvement in changing the various allegations over time.  Edwards' communications with the press provide direct evidence regarding the initial claims and how those claims changed over time.  They also provide substantial evidence on Ms. Giuffre's status as a limited public figure, inserting herself into coverage on the Epstein matter.  As a limited public figure, Ms. Giuffre will be required to prove actual malice by Ms. Maxwell.  All of Ms. Giuffre's counsel's communication with media are, thus, directly relevant to this case.

15

Edwards' undue burden claims fails for many of the same reasons previously discussed. Edwards voluntarily chose to insert himself in this matter, as a litigant and a fact witness.  He actively chose to file a case against Dershowitz, leading to substantial media interest.  These active decisions lead to him having his own personal and discoverable information that is directly at issue in this case.  The fact that these decisions may cause him to have to review his own documents, no matter how many documents there may be, is simply irrelevant.[6]

       RFP 19 & 20 – Requests for letters or communication to or by any witness or prospective witness

Mr. Edwards, as part of his litigation practice, has sent "witness solicitation letters" to prospective witnesses in this matter.  These letters contain a skewed version of the allegations in this case and are potential impeachment evidence in this case.  Mr. Edwards has immediate access to this information and the production of these letters would not be burdensome.

WHEREFORE, for the forgoing reasons, Ms. Maxwell requests that the Motion to Quash be Denied, and that Bradley J. Edwards be compelled to comply with the subpoena as modified herein.

---

[6] There are obviously numerous mechanisms by which these emails can be narrowed, culled and then reviewed, including the employment of agreed to search terms.  Ms. Maxwell's counsel is more than willing to discuss these options and come to an agreeable resolution.

16

Dated June 30, 2016

Respectfully submitted,


/s/ Jeffrey S. Pagliuca

Jeffrey S. Pagliuca (*pro hac vice*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:   303.831.7364
Fax:        303.832.2628
jpagliuca@hmflaw.com

Denise D. Riley (# 160245)
Riley Law PLLC
2710 Del Prado Blvd. S., Unit 2-246,
Cape Coral, FL 33904
Phone:  303.907.0075
denise@rileylawpl.com

*Attorneys for Ghislaine Maxwell*

17

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2016, I electronically filed the foregoing *Response of Ghislaine Maxwell to Bradley J. Edwards' Motion to Quash Subpoena, or in the Alternative, for a Protective Order* with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

> Jack Scarola
> Searcy Denney Scarola Barnhart &
> Shipley, P.A.
> 2139 Palm Beach Lakes Boulevard
> West Palm Beach, Florida 34409
> Phone: 561-686-6300
> Fax : 561-383-9451
> jsx@searcylaw.com
> mep@searcylaw.com
> Attorneys for Plaintiff Bradley J.
> Edwards

/s/ Nicole Simmons
_____

18